Spear, J.
The question in the case is as to the power of a municipal corporation, by ordinance, to compel a railroad company to station and keep a watchman at points where the tracks cross a street, and impose penalties for neglect to do so.
That the power to compel railroad companies to maintain watchmen at dangerous crossings is in the nature of police power, and that such power exists in the general assembly, may be conceded. But it does not follow that because the legislature has such power it may be exercised by municipal corporations. Such corporations, being created for convenience and economy in government, and to aid the state in legislation and administration of local affairs, arc always subject, in their public capacity, to the control of the state. As a result of this limitation, this corporation cannot possess the power referred to unless the same has been conferred by statute. Indeed, it is conceded by the learned counsel for plaintiff, that the power to pass the ordinance does not exist unless it has. been expressly granted by the legislature, or is clearly implied, and there is no doubt that this is the law. Power to enact such an ordinance would not be inherent in the council. Except as to incidental powers, such as are essential to the very life of the corporation, the presumption is that the state has granted in clear and unmistakable terms all it has designed to grant at all. Doubtful claims to power are resolved against the corporation. Cooley on Constitutional Limitations, 233, 234; Minturn v. Larue, 23 Howard (U. S.) 435; Bloom v. Xenia, 32 Ohio St. 465.
*122 It is contended that subdivisions one and three of section 1692 of the Revised Statutes, grant the power in question. The section referred to grants many general powers to cities and villages. We quote:. “ 1. To prevent riots, gambling, noise and disturbance, indecent or disorderly conduct or assemblages, and preserve the peace and good order, and protect the property of the municipal corporation and its inhabitants.” “3. To prevent injury or annoyance from anything dangerous, offensive or unwholesome, and to cause any nuisance to be abated.” It seems to us that it is immaterial whether the last clause of subdivision one be treated as confining protection to property, or, as urged by plaintiff’s counsel, it should be construed to read, “ protect the property of municipal corporations, and the property and lives of its inhabitants,” for it is difficult to see that the plaintiff’s claim would be advanced by the latter construction. The property of the inhabitant is just as much subject to risk when he attempts to drive across a railroad track as his person. However, the point is not whether the village has the right itself to take steps to protect its inhabitants, or their property, but whether it has the power to compel the railroad company to do it. The propositions are essentially different. We may concede the former without being at all aided in the solution of the latter. The same comment applies with equal pertinency to the language of the other subdivision wherein power is given to prevent injury from anything dangerous. It is not enough to show that municipal corporations have been given the power to protect property and life. To maintain this ordinance, it must be shown that they have been given the power to employ the agency here invoked to accomplish the object. If another agency, for instance, the employment of such watchmen by the village itself, would as well reach the same end, it cannot reasonably be said that the power to put in motion the agency here ordered, is clearly implied from the power to accomplish the purpose itself. The stationing of watchmen or policemen at street crossings to protect those driving across, is a familiar sight in cities. No lack of authority to do the same is believed to exist *123 in villages. Municipal corporations are capable of exercising police powers; but when tbe question is whether such an organization has authority to enact a particular ordinance, it must be shown that the power to do the particular thing in the way marked out, has been given, either expressly, or by clear implication. In this connection, it should not be forgotten, that the company, in the crossing of the street, is on an equality with any citizen. The streets are for public use, and the propelling of locomotives and cars across them, as has been held again and again, is a public use.- The company is, therefore, not a wrongdoer in crossing the street. While it can claim no exemption from police regulations to which natural persons are rightfully subjected, it nevertheless, in using the street-crossing, is not in the attitude of asking a privilege of the village, to the granting of which the latter would have the right to attach conditions. It is not claimed that power to compel the company to maintain a watchman is expressly granted by the subdivisions quoted. The authority, if it exists, must therefore, rest on implication. We think it has not been shown that the power in question is essential to carry into effect the general powers which are granted, and that the implication does not arise.
The power sought in this case to be exercised is similar to the power given t-o councils by sections 2494 and 2495 of the Revised Statutes, to compel railroad companies to light tracks running through municipalities. Each is a requirement which compels the company, not simply to use with care the dangerous engines which it propels over its tracks, but to provide and maintain new and separate safeguards for the protection of life and property; in each case the requirement is that the company adopt means outside of those ordinarily in use by it, to provide additional security'. It will hardly be claimed that power to compel lighting would exist in a council but for the express grant contained in the sections referred to. And if this be so, it would, we think, be difficult to demonstrate, that power to compel a watchman exists in the absence of an express grant. The power as to a watchman, as well as that as to lighting, is essentially *124 dissimilar from that to regulate speed, which is instanced by plaintiff’s counsel. The object in the latter case is to be attained by the use by the company of its machinery, and such regulation relates to how the company shall manage its own property when crossing a street of a village, while the requirement of a watchman relates to how it shall compel or induce others to regulate themselves and their property when approaching its track. The object of all three is the same, viz.: security for life and property; but the means to that end are not the same. So, if we should agree with the argument that power to. regulate speed exists by force of section 1692, and independent of the express grant given by section 2500 — and we are not disposed to dispute it— it would not, we think, follow that a like inference would be warranted as to the power to compel a watchman. Indeed, subdivision 13, of section 1692, (which gives authority to prevent fast driving and propelling of vehicles), would seem to authorize councils to regulate sj>eed of trains, and it may be that, but for the limit of the power of regulation in section 2500, its enactment would have been entirely unnecessary.
The case of Bergman v. Cleveland, 39 Ohio St. 651, is cited. This court in that ease held that the legislature, by granting to cities and villages power to regulate ale, beer and porter houses and shops, thereby conferred power to make it an offense to employ females - to wait upon customers with such liquors. With due deference, we must express our inability to see that this holding advances the plaintiff’s claim. The cases are not analagous. If there can be found a statute which indicates that the legislature intended to give to cities and villages general power to regulate railroads within their midst, then the case cited would be in point. The contrary ‘ appears. Power generally to regulate railroads seems to have been reserved by the state to itself, its exercise to be under the discretion of the general assembly. Thus general laws have been passed requiring railroad companies to maintain a signboard at each road crossing; to fence their tracks; to construct cattle-guards; to provide bridge between cars; to provide certain heating and lighting apparatus, etc., *125 etc. Regarding signals, section 3336, Rev. Stats., 83 Ohio L. 153, provides that every company shall attach to each locomotive a bell and a steam whistle, and requires the engineer in charge, on ajtproaching a road crossing or other travelled place, to sound the whistle at a distance of at least eighty and not further than one hundred rods, and ring the bell continuously until the engine passes; these provisions not to interfere with the proper observance of any ordinance passed by any city or village council regulating the management of railroad locomotives and steam whistles thereon within the city or village limits. Having in mind the test hereinbefore indicated, viz.: that grants of power to municipal corporations must be either in express terms, or by clear implication as necessary to carry into effect those expressly granted, and that questionable claims are resolved against the corporation, it may be doubted whether any grant of power is given to councils by this section. But if any is granted, it could have relation only to*the subject-matter of the section, and its extent could not exceed what is necessary to give full effect to the whole section. The purpose of the law is to require the use of steam whistle and bell upon locomotives approaching a road-crossing or other travelled place, and the utmost that can reasonably be claimed for the language used is to give municipal corporations authority to regulate the management of locomotives and steam whistles in those respects within corporate limits. There would be no warrant whatever for the conclusion that the section in any way confers power to require a watchman at such crossings. The other statutory requirements above mentioned control the company when operating its road through municipalities, as in the open country, although' more stringent regulations as to» some of them may be needed within the limits of cities and villages than without. We may perceive no reason why, as to the general regulation of the operation of locomotives and trains through cities and villages, power might not have been safely committed to municipal councils. It is enough to say that, for reasons known to the general assembly, which we are not *126 called upon to inquire into or question, that body has thus far seen fit not to confer that power.
But we are not discussing the question whether the legislature, in the exercise of its broad police power over railroad corporations, which are its creatures, should require watchmen at crossings, or whether power to so provide can be properly delegated to municipal corporations. As stated at the outset, the only question is whether under existing legislation they possess such power. We think they do not, and that the demurrer was properly sustained.

Judgment affirrried.